UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOEL F. WHITTAKER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> JUSTICE, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 18-cv-01434 (APM) |

## MEMORANDUM OPINION AND ORDER

I.

Federal agencies can request that the FBI perform a National Agency Check on a particular person, often for pre-employment vetting or a background investigation. The FBI then searches its records and provides the results to the requesting agency. Plaintiff Noel F. Whittaker is a retired analytical chemist for the National Institutes of Health. He brought this action under the Freedom of Information Act ("FOIA") to obtain a complete record of his 2007 background investigation report ("2007 Report"). The United States Office of Personnel Management released the report to Whittaker, but at the request of the Federal Bureau of Investigation ("FBI") redacted the results of a National Agency Check contained within the 2007 Report.

Defendants U.S. Department of Justice and Office of Personnel Management filed a Motion for Summary Judgment defending their withholding of the National Agency Check results, and Plaintiff filed a Cross-Motion for Summary Judgment challenging it. The court denies the parties' motions without prejudice for the reasons explained below.

II.

The government invokes FOIA Exemption 7(E) to withhold the National Agency Check results from the 2007 Report. *See* Defs.' Mot. for Summ. Judg., ECF No. 16, Ex. B, ECF No. 16-4 [hereinafter Hardy Decl.], ¶ 16. FOIA Exemption 7(E) consist of two elements. First, the requested information must be compiled for law enforcement purposes. *See* 5 U.S.C. § 552(b)(7). Second, the requested information must "disclose techniques and procedures for law enforcement investigations or prosecutions, or [] disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Id.* § 552(b)(7)(E); *see also Blackwell v. F.B.I.*, 646 F.3d 37, 41–42 (D.C. Cir. 2011).

Plaintiff concedes that information from a National Agency Check qualify as records compiled for a law enforcement purpose. *See* Pl.'s Opp'n to Defs.' Mot., ECF No. 17, at 3. The court therefore focuses on the second requirement of Exemption 7(E) and, in particular, whether Defendants have identified a law enforcement "technique" or "procedure" that would be disclosed if the redacted material were released.[1]

III.

Defendants identify three law enforcement techniques or procedures that they say Exemption 7(E) shields from disclosure. First, Defendants assert that disclosing the National Agency Check results would reveal the type of information that the FBI reviews when conducting a name check, including what is "determine[d] to be relevant to a name check request" and what type of information the FBI elevates to agencies requesting a name check. *See* Defs.' Reply Brief, ECF No. 20 [hereinafter Defs.' Reply], at 2. Second, they claim that "disclosure of the withheld information would provide an indication of whether or not derogatory information from FBI files"

---

[1] Defendants do not contend that the National Agency Check results are a protected "guideline."

exists, Hardy Decl. ¶ 23, thereby potentially "reveal[ing] the type of investigative material that the FBI (or other law enforcement agencies) maintain about Whittaker," Defs.' Reply at 3 (citing Hardy Decl. ¶ 27). Third, Defendants posit that the FBI's practice of asserting Exemption 7(E) as a matter of course to withhold National Agency Check results is itself a law enforcement technique or procedure that merits protection. *See* Hardy Decl. ¶ 25 (stating that "the application of 7(E) here is itself a law enforcement technique or procedure"). The court is certain that neither the second nor third grounds qualify for protection under Exemption 7(E) but lacks sufficient information as to the first.

It is not evident how revealing whether the FBI has "derogatory" information about a requester would disclose a law enforcement technique or procedure. *Id.* ¶ 23 (stating the disclosure would reveal "whether or not derogatory information from FBI files is located in response to the [name check], potentially the scope and/or volume of that information, and/or the focus of any FBI investigative or intelligence information . . . "). "The phrase 'techniques and procedures' . . . refers to how law enforcement officials *go about* investigating a crime." *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010) (emphasis added) (citation omitted). Disclosing the results of Plaintiff's National Agency Check would not necessarily reveal how the FBI "goes about" collecting information returned from such inquiries. The declarant certainly does not say so. If anything, Defendants' effort to protect the information returned by National Agency Check aligns more closely with FOIA Exemption 7(A), which protects information that "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Exemption 7(A) requires an agency to show that a proceeding is "pending or reasonably anticipated," *Leopold v. Dep't of Justice*, 301 F. Supp. 3d

13, 28 (D.D.C. 2018) (citation omitted), but Defendants have not tried to make such a showing as to Plaintiff.

As for the assertion that "the application of 7(E) here is itself a law enforcement technique or procedure," Hardy Decl. ¶ 25, the court finds that position to be puzzling. The position is odd, to say the least, as the FBI now has disclosed the very technique or procedure it seeks to protect. The court is aware of no case, and Defendants cite none, for the proposition that the practice of categorically invoking a FOIA Exemption is itself protected from disclosure under Exemption 7(E).

Defendants' first attempt at identifying a technique or procedure requires more discussion. According to Defendants, the FBI uses a "mosaic approach" to withholding National Agency Check results. Under that approach, the FBI refuses to disclose *all* National Agency Check results, regardless of whether such information exists or not, because "a requester, or hostile criminal/foreign elements could quickly detect this pattern and through analysis, determine whether or not criminal or national security-related investigation exists based on the redactions asserted or lack thereof." Hardy Decl. ¶ 26. In other words, by always withholding National Agency Check results, no requester could discern whether or not the FBI possesses investigation information about a person.

In assessing this justification, two cases provide useful guidance. The first is the D.C. Circuit's decision in *Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice* ("*CREW*"). *See* 746 F.3d 1082, 1102 (D.C. Cir. 2014). In *CREW*, Plaintiff brought a FOIA action seeking records from the FBI concerning the public corruption investigation of Tom Delay, the former Majority Leader of the U.S. House of Representatives. *See id.* at 1087. In refusing to release the records, the agency invoked Exemption 7(E) "to protect procedures and

techniques used by FBI [agents] during the investigation." *Id.* at 1102. The D.C. Circuit held that the agency's justification was not sufficient and that it had done no more than provide a "near-verbatim recitation of the statutory standard." *Id.* The agency had not identified "what procedures [were] at stake," and the court queried whether the procedures might involve "how the FBI conducts witness interviews? Or how it investigates public corruption?" *Id.* Nor had the agency explained how disclosure of the particular information "[w]ould reveal such procedures," and again the court asked, "Are the procedures spelled out in the documents? Or would the reader be able to extrapolate what the procedures are from the information contained therein?" *Id.* The court thus made clear that "the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed." *Id.*

The second case is *Kalu v. Internal Revenue Service*. *See* 159 F. Supp. 3d 16 (D.D.C. 2016). There, the plaintiff sought information to determine whether she appeared on "some form of watch list" kept by the FBI, because she had been subject to increased screenings at airports and "unusual" tax audits. *See id.* at 19. The FBI refused to confirm or deny that it had responsive records, issuing what is known as a "*Glomar* response." *See id.* at 21. The FBI invoked Exemption 7(E), arguing that merely disclosing the existence or nonexistence of a record would itself reveal "techniques and procedures" or "guidelines" "for law enforcement investigations." *See id.* at 22–24 (quoting 5 U.S.C. § 552(b)(7)). The court agreed, finding that the FBI's declarant had shown with "reasonable specificity" that the agency's *Glomar* response was justified under Exemption 7(E). Specifically, the declarant explained that the FBI maintains a Terrorist Watchlist, which contains a number of sub-lists, including the familiar No-fly List, that the FBI uses to identify suspected terrorists. *See id.* at 22. Though the existence of these lists is publicly known, the declarant stated, the criteria and standards for placing people on the list is not known, and if the

5

FBI began to make disclosures of the kind requested, terrorists and criminal elements could adjust their behavior to avoid placement on the list. *See id.* The court accepted this rationale, holding that a response to the plaintiff's FOIA request would disclose, at the very least, "guidelines for law enforcement investigations and prosecutions." *See id.* at 23.

This case lies somewhere between *Crew* and *Kalu*. To support the blanket invocation of Exemption 7(E), Defendants' declarant states: "If the FBI were to disclose responses when no derogatory information is found during a [National Agency Check] and withhold only derogatory responses, a requester, or hostile criminal/foreign elements could quickly detect this pattern and through analysis, determine whether or not criminal or national security-related investigation exists based on the redactions asserted or lack thereof." Hardy Decl. ¶ 26. This statement, however, does not make clear with "reasonable specificity," *Kalu*, 159 F. Supp. 3d at 22, "what procedures are involved and how they would be disclosed," *CREW*, 746 F.3d at 1102. Do National Agency Check results reference the technique or procedure themselves? Might the results implicitly reveal the technique or procedure used to gather information? Or could the results reveal the criteria or standards the FBI uses to place information in the National Agency Check database? The declarant does not answer these types of questions. "[T]he agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed." *CREW*, 746 F.3d at 1102. Defendants have not adequately done so here.[2]

---

[2] At least twice, the declarant references a Memorandum by the Attorney General issued in 1986 to justify its "mosaic" approach. *See* Hardy Decl. ¶¶ 24–25. The quoted portions of the Memorandum, however, pertain to section 552(c), which sets forth categories of records that are not subject to FOIA. *See* https://www.justice.gov/archive/oip/86agmemo.htm (last visited June 21, 2019). They do not concern Exemption 7(E), which the Memorandum addresses elsewhere.

IV.

Accordingly, Defendants' Motion for Summary Judgment is denied without prejudice. The court also denies Plaintiff's Cross-Motion. The court will allow Defendants to file a supplemental declaration and re-move for summary judgment. The parties shall meet and confer and propose a briefing schedule to the court by July 1, 2019.

Dated: June 21, 2019

Amit P. Mehta
United States District Court Judge